# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| MEANITH HUON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 11-cv-3050 |
| | ) | |
| WILLIAM MUDGE et al., | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendants' motion to transfer [34] pursuant to 28 U.S.C. § 1404(a), and Defendants' motion to supplement the record on their motion to transfer venue [76]. For the reasons below, both motions [34, 76] are granted. The Clerk is directed to transfer this case to the United States District Court for the Southern District of Illinois, East St. Louis Division.

## I.      Background

On May 6, 2011, Plaintiff Meanith Huon filed a nineteen count complaint against the Defendants William Mudge, Thomas Gibbons, Chris Hoell, Amy Chapmas, Madison County State's Attorney's Office, William Marconi, David Vucich, Brad Wells, Sheriff Robert Hertz, Madison County Sheriff's Department and Madison County (collectively "Madison County Defendants" or "Defendants"), Chicago Police Officer Brian McKendry, and the City of Chicago ("Chicago Defendants"). Plaintiff's complaint arises out of a criminal investigation, arrest, and criminal proceedings which primarily took place in Madison County, Illinois in 2009. On August 25, 2011, the Madison County Defendants filed a motion to transfer the case to the Southern District of Illinois, arguing that only two of the listed parties resided outside of the Southern District of Illinois and a majority of the relevant events occurred in the Southern

District.  Plaintiff then filed a twenty-seven count first amended complaint in which he added

two Defendants located in the Northern District as well as several defendants in the Southern

District.[1]   In his first amended complaint, Plaintiff alleges that "as a result of egregious

misconduct by law enforcement and prosecutors" he was "wrongfully arrested in Chicago in

2008 and was prosecuted for alleged evil crimes that he did not commit."

The Madison County Defendants argue that this case should be transferred to the

Southern District of Illinois because a vast majority of the events set forth in Plaintiff's

complaint took place in the Southern District, a majority of the party Defendants are located

within the Southern District, and a majority of the non-party witnesses are located in or nearby

the Southern District of Illinois.  In other words, they argue that the Southern District is the more

appropriate venue.  Plaintiff, on the other hand, contends that the Northern District is the only

proper venue for his claims.

## II.     Legal Standards Governing Section 1404(a) Motions

A district court, "[f]or the convenience of parties and witnesses, in the interest of justice,

* * * may transfer any civil action to any other district court where" jurisdiction and venue

would have been proper at the time the suit was initiated.  28 U.S.C. § 1404(a); *Hoffman v.*

*Blaski*, 363 U.S. 335, 344 (1960) (situation at the initiation of the suit affords the critical

timeframe).  The moving party has the burden of establishing "that the transferee forum is clearly

more convenient," based on the particular facts of the case.  *Coffey v. Van Dorn Iron Works*, 796

---

[1] Plaintiff now asserts claims against: Defendants William Mudge, Thomas Gibbons, Chris Hoell, Amy
Chapmas, Madison County State's Attorney's Office, William Marconi, David Vucich, Brad Wells,
Sheriff Robert Hertz, Madison County Sheriff's Department and Madison County (collectively "Madison
County Defendants" or "Defendants"), Chicago Police Officer Brian McKendry, City of Chicago, The
Great Lakes Regional Fugitive Task Force (collectively, the "Chicago Defendants") and Brian Timpone,
Madison Record, Steve Gonzalez, Steve Korris, Holly Meyer, Belleville News-Democrat, Beth
Hundsdorfer, The Alton Telegraph, Jim Shrader, and Stanford Schmidt (collectively, the "Media
Defendants").

F.2d 217, 219-20 (7th Cir. 1986). The district court has the authority to "make whatever factual findings are necessary * * * to determin[e] where venue properly lies." *In re LimitNone, LLC*, 551 F.3d 572, 577 (7th Cir. 2008).

In evaluating motions brought pursuant to Section 1404(a), the Court considers: (1) the plaintiff's choice of forum, (2) the convenience of the parties, (3) the convenience of witnesses, (4) the interests of justice, and (5) the location of the material events giving rise to the case. *Roberts & Schaefer Co. v. Merit Contracting, Inc.*, 99 F.3d 248, 254 (7th Cir. 1996) (listing the first four statutory factors); *Continental Cas. Co. v. Staffing Concepts, Inc.*, 2009 WL 3055374, *2-3 (N.D. Ill. Sept. 18, 2009) (same; elaborating on private- and public-interest sub-factors).[2] Although the statute itself lists only the first four factors, considering additional factors, such as location of the material events, is appropriate. The Seventh Circuit teaches that the specified statutory "factors are best viewed as placeholders for a broader set of considerations, the contours of which turn upon the particular facts of each case." *Coffey*, 796 F.2d at 219 n.3; see also *Cote v. Wadel*, 796 F.2d 981, 985 (7th Cir. 1986) (explaining that the broad discretion accorded the trial court is a product of the "in the interest of justice" language of the statute); *Am. Commercial Lines, LLC v. Northeast Maritime Institute, Inc.*, 588 F. Supp. 2d 935, 945 (S.D. Ind. 2008) (observing that courts "entertain a wide variety of factors" in evaluating venue transfer motions).

The first factor, the plaintiff's choice of forum, typically is accorded significant weight. "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 664 (7th Cir. 2003) (quoting

---

[2] Beyond the statutory factors, there appear in the case law variations among courts as to the specific factors that should be analyzed, as well as the classification of those factors. Compare, *e.g.*, *Am. Family Ins. ex rel. Suddarth v. Wal-Mart Stores, Inc.*, 2003 WL 1895390, *1 (N.D. Ill. Apr. 17, 2003), with *Graham v. United Parcel Svc.*, 519 F. Supp. 2d 801, 808-09 (N.D. Ill. 2007). Although courts vary in their precise formulations, in the end they generally consider the same factors.

*Gulf Oil Corp v. Gilbert*, 330 U.S. 501, 508 (1947)).  The Seventh Circuit has stated, however, that the Plaintiff's choice of forum has only "minimal value where none of the conduct occurred in the forum selected by the plaintiff."  *Chicago, Rock Island, & Pac. R.R. Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir. 1955).

With regard to the second factor, courts consider the residences and resources of the parties—in essence, their "abilit[y] to bear the expense of trial in a particular forum."  *Von Holdt v. Husky Injection Molding Sys. Ltd.*, 887 F. Supp. 185, 188 (N.D. Ill. 1995).  Examination of the third factor, the convenience of witnesses, emphasizes not just the raw number but "the nature and quality of the witnesses' testimony."  *Gueorguiev v. Max Rave, LLC*, 526 F. Supp. 2d 853, 858 (N.D. Ill. 2007).  Many courts state that, all other things being equal, the convenience of non-party witnesses is accorded greater weight than the convenience of party witnesses, the latter of whom have to participate (or rather, whose non-participation brings more easily administered consequences).  See, *e.g.*, *First Nat'l Bank v. El Camino Resources, Ltd.*, 447 F. Supp. 2d 902, 913 (N.D. Ill. 2006).  At the same time, a movant cannot meet its burden with only vague statements about the inconvenience imposed by the litigation on non-party witnesses: "The party seeking transfer must specify the key witnesses to be called and make a generalized statement of their testimony."  *Id.* (citing *Federated Dept. Stores, Inc. v. U.S. Bank Nat'l Assoc.*,, 2001 WL 503039, *4 (N.D. Ill. May 11, 2001)); see also *Am. Family Ins. ex rel. Suddarth v. Wal-Mart Stores, Inc.*, 2003 WL 1895390, *2 (N.D. Ill. Apr. 17, 2003) (defendant must show that the testimony of the particular witnesses is necessary to its case).

The broadly worded fourth factor, "the interest of justice," captures several considerations, including

> relative ease of access to sources of proofs; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing witnesses;

the possibility of a view of the premises; and the state of the court calendar both in the District where the case is pending, and in the District to which it is sought to have the case transferred.

*Igoe*, 220 F.2d at 303; see also *In re Nat'l Presto Indus., Inc.*, 347 F.3d at 664 (discussing the "subpoena range" of the district court). Courts also consider their familiarity with the applicable law and "the desirability of resolving controversies in their locale." *Rabbit Tanaka Corp. USA v. Paradise Shops, Inc.*, 598 F. Supp. 2d 836, 841 (N.D. Ill. 2009).

The fifth factor, the location of the material events giving rise to the case, becomes comparably more important when it differs from the plaintiff's choice of forum. *Amorose v. C.H. Robinson Worldwide, Inc.*, 521 F. Supp. 2d 731, 735 (N.D. Ill. 2007).

## III. Analysis

As an initial matter, Defendants concede that the Northern District of Illinois is a proper venue for this suit. They argue, however, that under 28 U.S.C. § 1391(b)(2), the Southern District of Illinois is also an appropriate venue because jurisdiction is proper in a district in which a substantial part of the events or omissions giving rise to the claim occurred, and in this case a majority of the incidents that gave rise to the allegations in Plaintiff's complaint occurred in the Southern District of Illinois. Specifically, they note that the following occurred in the Southern District: (1) the alleged sexual assault that led to a criminal investigation into Plaintiff; (2) the resulting criminal investigation; (3) the majority of the investigation into Plaintiff's alleged cyber stalking; (4) the majority of any time that Plaintiff was detained as a part of the criminal investigation; (5) the criminal prosecution of Plaintiff; and (6) the alleged false statements that Plaintiff contends were published. Looking at Plaintiffs complaint, the Court agrees with Defendants; a majority of the allegations in Plaintiffs complaint occurred in the

Southern District of Illinois. Therefore, pursuant to § 1391(b)(2), venue is also proper in the Southern District.

Because venue is proper in the Southern District, the Court now looks to the relevant factors—(1) the plaintiff's choice of forum, (2) the convenience of the parties, (3) the convenience of witnesses, (4) the interests of justice, and (5) the location of the material events giving rise to the case—to determine whether the case should be transferred.

Plaintiff's choice of forum (the first factor) weighs in favor of denying the Madison County Defendants' motion. Defendants argue, however, that "where plaintiff's choice of forum is not the site of material events, plaintiff's choice of forum is entitled to less deference." *First Nat. Bank. v. El Camino Resources, Ltd*., 447 F. Supp.2d 902, 912 (N.D. Ill. 2006). Thus, the Court considers—in tandem with choice of forum—the location of material events to determine the appropriate amount of deference to give to Plaintiff's choice. *Igoe*, 220 F.2d at 304.

Plaintiff's twenty-five count amended complaint contains the following allegations. On or about June 30, 2008, the Madison County Sherriff's Department was notified of an alleged sexual assault that transpired within Madison County, Illinois. The Madison County Sheriff's Department then conducted a criminal investigation which took place primarily in Madison County. The arrest warrants and search warrants that were issued for Plaintiff originated in Madison County. Plaintiff was interviewed by Madison County Sheriff's Department investigators in Madison County, and the review of electronic evidence relating to the criminal charges was conducted in Madison County. The allegedly improper statements to which Plaintiff refers were made by Madison County Defendants and published in or near Madison County. In fact, the only allegations Plaintiff makes that took place in the Northern District

6

occurred because the Madison County Defendants had to execute their search warrant for Plaintiff at his home in Chicago, and in doing so involved the Chicago Defendants.

In his response brief, Plaintiff attempts to divert the Court's attention away from the location of a vast majority of his claims by focusing on witnesses that were not called at his criminal trial and by emphasizing the search of his home and his arrest in Chicago before he was transported back to Madison County where he was later prosecuted. But reading the entirety of Plaintiff's seventy-two page complaint, it is clear that an overwhelming majority of Plaintiff's material allegations took place in the Southern District of Illinois. Furthermore, the relevant proof required to determine the validity of a majority of Plaintiff's claims—due process, malicious prosecution, defamation, false imprisonment, and conspiracy—will involve acquiring information and evidence that was gathered for and used in the Madison County criminal case. Because a majority of material events occurred in the Southern District, the Court gives less weight to Plaintiff's choice of forum. See *First Nat. Bank.*, 447 F. Supp.2d at 912.

The second factor—the convenience of the parties—weighs in favor of transferring the case. Plaintiff contends that he will not be able to bear the expense of a trial in the Southern District of Illinois and therefore the case should not be transferred. *Van Holdt*, 887 F. Supp. at 188. But Defendants note that eleven Defendants reside in Madison County, while only four Defendants and the Plaintiff reside in Chicago. More importantly, the amended complaint contains extensive allegations against the eleven Madison County Defendants and minimal allegations against the Chicago Defendants. Thus, despite Plaintiff's unsupported assertion that he will not be able to afford litigation in Madison County, the second factor weighs in favor of granting Defendants' motion because the vast majority of parties reside in the Southern District.

The third factor—the convenience of witnesses—also weighs in favor of granting the motion to transfer. Plaintiff argues that because the Madison County Defendants did not call witnesses during the course of his criminal trial this factor weighs against transfer. But the issue of whether the Madison County Defendants called witnesses at Plaintiff's criminal trial is irrelevant to whether there are witnesses in Madison County in this civil case. Defendants note that the party whose charges against Plaintiff prompted the underlying criminal charge resides in Macoupin County, Illinois, which is adjacent to Madison County in southern Illinois.[3] And while Plaintiff is correct that since he filed his first amended complaint, Defendants have not specifically named any witnesses other than the victim,[4] Plaintiff also has not named a single witness in the Chicago area. Ultimately, any additional non-party witnesses are more likely to be in the Madison County area, since—other than the arrest and transport of Plaintiff—all of the pertinent events occurred in Madison County, Illinois. Thus, the Court finds that the third factor weighs in favor of transfer.

The Court next considers the fourth factor, the interests of justice. Considering factors such as (1) docket congestion and likely speed to trial in the transferor and potential transferee forums; (2) each court's relative familiarity with the relevant law; (3) the respective desirability of resolving controversies in each locale; and (4) the relationship of each community to the controversy, *Research Automation Inc. v. Schrader-Bridgeport Intern., Inc*., 626 F.3d 973, 978 (7th Cir. 2010), the interests of justice weigh in favor of transferring the case.

---

[3] Macoupin County is less than one hour from Madison County, whereas it is nearly five hours from Chicago. Source: Google Maps.

[4] Defendants note that they had previously identified other witnesses, all of whom reside in Madison County, but Plaintiff, in his amended complaint, added them as Defendants so they are now considered party witnesses.

In this case, familiarity of the law is not an issue since both the transferor and transferee venues are in the state of Illinois.  It is relevant, however, that the allegations in Plaintiff's complaint take place almost entirely in the Southern District of Illinois.  Furthermore, the only reason that the Chicago Defendants are parties to this suit is that the Madison County Defendants followed Plaintiff from Madison County to Chicago on a warrant.  Were it not for Plaintiff's alleged role in the underlying criminal case—which took place in Madison County—this case would not exist.

Plaintiff argues that the fourth factor weighs against transfer because he would not receive a fair trial in the Southern District.  Specifically, he contends that he will not receive a fair trial because the Chief Judge of the Southern District was formally a Madison County Judge; some of the Defendants might be friends with some of the Judges; and it would be impossible for him to find an attorney who was not friends with one of the Defendants.  Any suggestion that a judge is incapable of being impartial cannot be given credence without actual evidence to back it, of which Plaintiff has offered none.  Every day federal courts in this and other districts hear cases against public officials, government entities, and police officers in their respective jurisdictions.  Plaintiff is suing the Madison County Defendants because they investigated, arrested, and prosecuted him.  Ironically, despite having been acquitted at a criminal trial held in Madison County, Plaintiff now thinks he is incapable of receiving a fair civil trial in the Southern District of Illinois.

In regard to obtaining counsel, Plaintiff acknowledges that he was successfully represented in his criminal case by an attorney from St. Louis, which is located directly across the Mississippi River from Madison County and East St. Louis, which is the location of the federal court to which this case would be transferred.  And in regard to Plaintiff's concerns about

his financial condition, the Court notes that Plaintiff himself is a lawyer – surely an asset in litigation even if he chooses to retain counsel rather than represent himself – and the lion's share of costs in any litigation comes not from the need to be physically present at the court house, but rather from the costs of discovery and motion practice, which will be incurred regardless of where the case is pending.[5]

Finally, the Southern District has significantly more relation to this case and desire to resolve it than the Northern District, because it involves numerous public figures and organizations in Madison County, and the underlying investigation and trial took place there. Accordingly, the fourth factor weighs in favor of transfer.

The fifth factor—the location of material events—also weighs in favor of transfer. As discussed above in detail, the overwhelming majority of Plaintiff's allegations concern activity that occurred in Madison County and not in Chicago.

Taking all five factors into consideration, the Southern District of Illinois is the more appropriate venue for this case: an overwhelming majority of the material events occurred in the Southern District; most of the evidence will come from the Southern District; a majority of the parties reside in the Southern District; a majority of any non-party witnesses are likely to reside in the Southern District; and the Southern District and its citizens have a greater relation to and interest in resolving this case. Accordingly, the Court grants Defendants' motion to transfer.

---

[5] Also germane to the Plaintiff's arguments concerning the interests of justice factor is information recently disclosed by Plaintiff to Defendants and passed along to the Court in Defendants' motion to supplement the record on Defendants' motion to transfer venue [76] and Plaintiff's amended response to that motion [79]. Specifically, Plaintiff has disclosed that he has leased a two-bedroom apartment in the St. Clair/Madison County area and that he "now ha[s] dual residency in Chicago and in St. Clair County, Illinois." Because the pertinent factors strongly favor transfer, this development has little, if any, bearing on the disposition of the motion. But it does suggest that Plaintiff's financial circumstances are not entirely "feeble," as he indicated in his brief, and that the inconvenience to Plaintiff of litigating in southern Illinois similarly may well be overstated. Plaintiff also indicated in his response that he is no longer employed at one of the law firms for which he previously worked, but he still has two legal jobs in the Chicago area.

**IV. Conclusion**

For the foregoing reasons, Defendants' motion to transfer [34] is granted. This case is hereby transferred to the United States District Court for the Southern District of Illinois, East St. Louis Division. In addition, Defendants' motion to supplement the record on Defendants' motion to transfer venue [76] is granted, and the notice of motion date of February 14, 2012 in the district court in Chicago is stricken, with no appearances being necessary on that date. Finally, the notice of motion date of February 22, 2012 for presentment of Plaintiff's motion to strike [72] also is stricken; Plaintiff should re-notice that motion once a judge is assigned in the transferee district.

Dated: February 9, 2012

_____
Robert M. Dow, Jr.
United States District Judge