IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MEANITH HUON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 12 -CV-0166 –MJR-PMF |
| | ) | |
| FORMER MADISON COUNTY STATE'S | ) | |
| ATTORNEY WILLIAM MUDGE, | ) | |
| ASSISTANT STATE'S ATTORNEY | ) | |
| CHRIS HOELL, ASSISTANT STATE'S | ) | |
| ATTORNEY AMY CHAPMAN, | ) | |
| DETECTIVE WILLIAM MARCONI, | ) | |
| DETECTIVE DAVID VUCICH, CAPTAIN | ) | |
| BRAD WELLS, MADISON COUNTY | ) | |
| SHERIFF ROBERT HERTZ, MADISON | ) | |
| COUNTY SHERIFF DEPARTMENT, | ) | |
| MADISON COUNTY, MADISON | ) | |
| COUNTY SHERIFF DEPUTY JOHN DOE | ) | |
| NO. 1, | ) | |
| ("MADISON COUNTY DEFENDANTS") | ) | |
| | ) | |
| | ) | |
| CHICAGO POLICE OFFICER BRIAN | ) | |
| MCKENDRY, CITY OF CHICAGO, | ) | |
| CHICAGO POLICE OFFICER JOHN DOE | ) | |
| NO. 2, | ) | |
| ("CHICAGO DEFENDANTS") | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

## MEMORANDUM AND ORDER

REAGAN, District Judge:

This matter is before the Court on the Motion for Summary Judgment of Defendants Brian McKendry and the City of Chicago (collectively "Chicago Defendants") as to all claims brought against them in Counts I through IX, and Counts XIV through XVII of Plaintiff's First Amended Complaint ("FAC") (Doc. 146).  This matter is also before the Court on the Motion for Summary Judgment of Defendants William Mudge, Chris Hoell, and Amy Chapman (collectively "State's Attorney Defendants"), as well as William Marconi, David Vucich, Brad Wells, Sheriff Robert Hertz, the Madison County Sheriff's Department, and Madison County (**all** collectively known as the "Madison County Defendants") as to all claims asserted against them in Plaintiff's FAC (Doc. 145).   For the reasons set for the below, the motions for summary judgment (Docs. 145 & 146) are **GRANTED**.[1]

### Factual & Procedural Background[2]

On June 1, 2011, Meanith Huon ("Plaintiff") filed a 19-count complaint in the Northern District of Illinois against fourteen different defendants for violations of his civil rights.   On September 25, 2011, Plaintiff filed his 27-count First Amended Complaint, which is seventy pages long and alleges claims against thirteen named defendants and two unnamed John Does.   This case was transferred from the Northern

---

[1] The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1367(a) (supplemental jurisdiction).   Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper here as a majority of the incidents that gave rise to the allegations in Plaintiff's FAC occurred in the Southern District of Illinois.

[2] The factual background has been taken from the parties' briefs and Plaintiff's First Amended Complaint. The Court does not cite to specific pages of deposition testimony due to the fact that the Protective Order (Doc. 140) entered in this case arguably covers some of that material.

District of Illinois to this Court on February 24, 2012 (*See* Docs. 81, 84, 85).

The claims in Plaintiff's FAC stem from two arrests, the first one occurred on July 2, 2008[3] and the second one occurred on July 19, 2009. Both arrests stemmed from crimes relating to an alleged criminal sexual assault involving Plaintiff and a female victim on June 28, 2008. In Plaintiff's FAC, he alleges that "as a result of egregious misconduct by law enforcement and prosecutors" he was "wrongfully arrested in Chicago" and was "prosecuted for alleged evil crimes he did not commit."

*The 2008 Arrest*

On June 28, 2008, Plaintiff arranged a meeting with Jane Doe[4] whereby he would pay Jane Doe $300.00 to accompany him to the bars (Doc. 146, p. 2). Both Jane Doe and Plaintiff provided each other with alias names. On June 29, 2008, Plaintiff met Jane Doe at a bar in St. Louis, Missouri (Doc. 146, p. 3). After visiting the bars, Plaintiff and Jane Doe drove north on Interstate Highway 55 toward Chicago, Illinois (*Id*.). Plaintiff alleges that Jane Doe pestered him for additional money and performed a simulated oral sex act upon him (*Id*.). Plaintiff alleges that Jane Doe then voluntarily got out of Plaintiff's car, and he left her for fear of being associated with potential criminal drug activity (*Id*.).

Jane Doe, on the other hand, alleges that Plaintiff yelled at her and sexually

---

[3] The parties' briefs conflict regarding whether Plaintiff was arrested on July 1, 2008 or July 2, 2008. Based upon a reading of the arrest report (Doc. 150-8), the Court determines the proper arrest date to be July 2, 2008.
[4] The Court has decided to continue using the pseudonym of "Jane Doe" in this Order, rather than refer to the victim's real name.

assaulted her (*Id.*).   In fear of her safety, she jumped out of the car, ran to the nearest house of a witness, and then contacted the Madison County Police (*Id.*, Doc. 46, p. 8). Specifically, Jane Doe advised the police of what transpired in the vehicle (Doc. 46, p. 9). She explained to the police that Plaintiff yelled at her to perform oral sex on him.   She further explained that, when Plaintiff slowed to make a turn to head south on Interstate Highway 55, she jumped out of the car and ran for safety (Doc. 46, p. 8-9).   She also advised them that she had left some of her belongings with Plaintiff in his vehicle (Doc. 146, p. 3).

The police were able to obtain Plaintiff's cell phone number from Jane Doe.   The subscriber information on the prepaid phone was registered to a "John Rogers at P.O. Box 4356, Los Angeles, CA, 90210" (Doc. 145-8).   The Madison County police utilized cellular technology to discover a general location for Plaintiff's cell phone in Chicago (Doc. 146, p. 3-4).   The approximate area of where the phone was located was within the 3000 block of South Canal Street (Doc. 146, p. 4). The Madison County officials then contacted the Chicago Police Department and asked them to conduct surveillance on that address (*Id.*).

Defendant CPD Officer Brian McKendry ("McKendry"), who was assigned to the fugitive apprehension task force, was directed to conduct surveillance of the city block where Madison County officials determined Plaintiff's phone to be located (Doc. 146, p. 4, Doc. 46, p. 9).   Madison County also provided the CPD with a physical description of

Plaintiff as an Asian male and a brief description of the investigation (Doc. 146, p. 4, Doc. 46, p. 10).

Defendant McKendry conducted surveillance dressed as a Water Department employee and knocked on doors to speak with residents (Doc. 146, p. 4).   When Defendant McKendry reached 3038 S. Canal, he alleges that he noticed a package at the front door (*Id*.).   Defendant McKendry alleges that the name on the package read "Meanith Huon," which Defendant McKendry believed could be that of an Asian male (*Id*.).   He then relayed that address and name to the Madison County detectives (*Id*.).

Madison County confirmed that Plaintiff was the correct individual based off a comparison his driver's license photo, obtained through the Illinois Secretary of State's computer system, and a surveillance video of Plaintiff and Jane Doe that was obtained from the Broadway Oyster Bar in Downtown St. Louis (Doc. 146, p. 4).   The officers observed several similarities between facial features and physical attributes (Doc. 145-8). Specifically, Defendant Vucich alleged that he noticed a receding hairline as described by Jane Doe and his age and weight were consistent with his physical characteristics (Doc. 145-8).   Defendant Vucich then conducted a Google image search of Plaintiff's name which he asserts further confirmed his identity.   Madison County detectives obtained a search warrant for 3038 S. Canal, which they and the CPD officers then executed on July 2, 2008 (*Id*.).   Among these officers were Defendants Marconi, Vucich and McKendry (Doc. 46, p. 11).

Plaintiff was placed under arrest at his apartment located in Chicago, Illinois based on the information relayed to Defendant McKendry by Madison County detectives (Doc. 146, p. 5).   Plaintiff was interrogated at his apartment (Doc. 46, p. 11). The detectives conducted a search of the residence and found the items described in the search warrant, which included Jane Doe's cell phone (Doc. 146, p. 5).   Plaintiff was detained until he was transferred to Madison County (*Id.*). Plaintiff was charged by Madison County detectives, prosecuted in Madison County and was found not guilty of the 2008 offense.

### The 2009 Arrest

In July of 2009, Jane Doe notified Madison County detectives that she had googled Plaintiff's name and came upon an internet blog administered by Plaintiff (Doc. 46, p. 16, Doc. 146, p. 5).   She claimed that many of the blog entries were directed at her and contained material that she found to be objectionable and frightening (Doc. 146, p. 5).   Jane Doe also told the Madison County detectives that she knew the material in the blogs was directed at her because the statements referred to her as "Dede" (her e-mail nickname) and identified where she was from (Carlinville, IL) (*Id.*).

On July 19, 2009, CPD officers Ronald Newman ("Newman") and Brian Melson ("Melson"), acting on an arrest warrant issued by Madison County, went to Plaintiff's residence and woke him up by knocking at the front door (Doc. 146, p. 6, Doc. 46, p. 17). Plaintiff was informed by one of the officers that he was wanted by the police and would

have to come with them (Doc. 146, p. 6).   Plaintiff claims that he was ordered to change clothes and one of the officers would not allow him to change alone (Doc. 146, p. 6). Plaintiff asserts that when he changed his clothes his naked body was momentarily exposed to the officer (Doc. 146, p. 6).   Plaintiff was then taken into custody to be transferred down to Madison County (Doc. 146, p. 6).   Plaintiff alleges he was strip searched for a second time at the Madison County Jail (Doc. 46, p. 17).   These cyberstalking and witness harassment charges were prosecuted by Madison County and were ultimately dismissed *nolle prosequi*.[5]

## Standard of Review

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Anderson v. Donahoe,* **699 F.3d 989, 994 (7th Cir. 2012),** *citing* FED. R. CIV. P. **56(a).** "A genuine issue of material fact remains 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Serednyj v. Beverly Healthcare, LLC,* **656 F.3d 540, 547 (7th Cir. 2011),** *citing Anderson v. Liberty Lobby, Inc.,* **477 U.S. 242, 248 (1986).**

In assessing a summary judgment motion, the district court views all facts in the light most favorable to, and draws all reasonable inferences in favor of, the non-moving

---

[5] "A *nolle prosequi* is not a final disposition of a case but is a procedure which restores the matter to the same state which existed before the Government initiated the prosecution." *Washington v. Summerville,* **127 F.3d 552, 557 (7th Cir. 1997).**

party.  *Anderson v. Donahoe,* **699 F.3d at 994,** *citing Ault v. Speicher,* **634 F.3d 942, 945 (7th Cir. 2011).**  *Accord Righi v. SMC Corp.,* **632 F.3d 404, 408 (7th Cir. 2011);** *Delapaz v. Richardson,* **634 F.3d 895, 899 (7th Cir. 2011).**  The movant bears the initial burden of showing with the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" the absence of a genuine issue of material fact.  **FED.R.CIV.P. 56(c).**

The Seventh Circuit has pointedly declared that summary judgment is the "put up or shut up moment" in the case, at which "the non-moving party is required to marshal and present the court with the evidence she contends will prove her case," evidence on which a reasonable jury could rely.  *Porter v. City of Chicago,* **700 F.3d 944, 956 (7th Cir. 2012),** *citing Goodman v. Nat'l Sec. Agency, Inc.,* **621 F.3d 651, 654 (7th Cir. 2010).**  The Court need only consider the cited materials, FED. R. CIV. PRO. 5(c)(3), and the Seventh Circuit has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them."  *Johnson v. Cambridge Indus.,* **325 F.3d 892, 898 (7th Cir. 2003)**.

## Discussion

### I.    Plaintiff's § 1983 Malicious Prosecution Claims (Counts 4 & 5)

In Count 4 and Count 5 of Plaintiff's FAC, Plaintiff asserts claims against the Chicago Defendants and the Madison County Defendants for federal law malicious

prosecution.

The Seventh Circuit has held that "the existence of a tort claim under state law knocks out any constitutional theory of malicious prosecution." ***See Newsome v. McCabe*, 256 F.3d 747, 750-51 (7th Cir. 2001)**.   This result was compelled by *Albright v. Oliver*, when the United States Supreme Court reasoned that, given the fact that Illinois provided a tort remedy for malicious prosecution, there was "neither need nor legitimacy to invoke § 1983." **510 U.S. 266, 285, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994)**.

Here, because Illinois has a cause of action for malicious prosecution, Plaintiff may not bring these federal law claims of malicious prosecution against any of the Defendants.   Accordingly, both Defendants' Motions for Summary Judgment as to Plaintiff's federal law malicious prosecution claims against them (Count 4 & 5) are **GRANTED**.   Counts 4 and 5 are dismissed with prejudice.

## II.    Statute of Limitations

The Madison County Defendants assert that Plaintiff's Section 1983 false arrest claim in connection with the 2008 charges (Count 3) and his state law false imprisonment claim for both arrests (Count 9) are barred by the statute of limitations.   The Chicago Defendants assert that all of the following claims are barred by the statute of limitations: Plaintiff's Section 1983 false arrest Claim (Count 3), state law intentional infliction of emotional distress claim (Count 8), state law false imprisonment claim (Count 9), and state law conspiracy (Count 15).   The Court will analyze the statute of limitations as it

applies to each of these claims separately.

### A.  Plaintiff's Federal Law Claims

Both the Chicago Defendants and the Madison County Defendants allege that Plaintiff's Section 1983 False Arrest claim against both sets of defendants (Count 3) is barred by the statute of limitations.

The Supreme Court has held that a plaintiff's Section 1983 claim accrues at the moment the alleged constitutional violation occurs.  *Wallace v. Kato*, **549 U.S. 384, 388, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007)**; *Chardon v. Fernandez*, **454 U.S. 6, 8, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981)**.  Further, a state's statute of limitations governs the statute of limitations for a Section 1983 claim for personal injury torts.  *Kalimara v. Ill. Dept. of Corr.*, **879 F.2d 276, 277 (7th Cir. 1989) (citing** *Wilson v. Garcia*, **471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985))**.  The Seventh Circuit "has consistently held that the appropriate statute of limitations for § 1983 cases filed in Illinois is two years. . . " *Ashafa v. City of Chicago*, **146 F.3d 459, 461 (7th Cir. 1998)**.

### 1.  False Arrest (Count 3)

The false arrest claim relating to the 2009 arrest accrued on the day of the incident, July 19, 2009, when Plaintiff was arrested.  *See Wallace v. City of Chicago*, **440 F.3d 421, 423 (7th Cir. 2006) (with a false arrest claim, the accrual date is the date of the arrest)**.  Plaintiff's original Complaint was filed on May 6, 2011 (Doc. 1).   Thus, the false arrest claim relating to the 2009 arrest is timely under the two-year statute of limitations.

The false arrest claim relating to the 2008 arrest, on the other hand, is not timely.

This claim accrued on the day of the arrest, July 2, 2008.   Plaintiff's original Complaint was filed on May 6, 2011 (Doc. 1).   More than two years elapsed between the accrual of the claim on July 2, 2008 and the filing of the Complaint on May 6, 2011.   Thus, the false arrest claim relating to the 2008 arrest is untimely under the statute of limitations.

Plaintiff, however, argues that equitable tolling and equitable estoppel applies to this claim.   Specifically, Plaintiff asserts that Defendant McKendry withheld production of his street file until 2013 and Defendant McKendry's false statements at trial played a role in Plaintiff's continued prosecution, thereby, delaying Plaintiff from bringing suit (*See* Doc. 151, p. 10).   Plaintiff also alleges that Defendant Hoell's threats against him also delayed him from bringing suit (*See* Doc. 150, p. 11).

The doctrine of equitable tolling "deals with situations in which timely filing is not possible despite diligent conduct." ***Farzana K. v. Indiana Dept. of Educ.,* 473 F.3d 703, 705 (7th Cir. 2007)**.   Equitable tolling is granted "sparingly," and "[e]xtraordinary circumstances far beyond the litigant's control must have prevented the timely filing." ***United States v. Marcello,* 212 F.3d 1005, 1010 (7th Cir. 2000)**.   "In cases of false arrest, the plaintiff will be aware both of his injury, i.e., the wrongful arrest, and those responsible for that injury, i.e., the police, at the time of arrest, therefore no delay in the accrual of the cause of action is necessary." ***Johnson v. Guevara,* No. 05-C-1042, 2007 WL 2608525, at \*2 (N.D. Ill. Sept. 5, 2007) (citing *Rolax v. Whitman,* 175 F.Supp.2d 720, 727 (D.N.J. 2001)**.   Although the accrual analysis in a Section 1983 case is governed by

federal law, the tolling analysis is governed by state law.   *Savory v. Lyons*, **469 F.3d 667, 672 (7th Cir. 2006)**.   Under Illinois law, "[e]quitable tolling may be appropriate if defendant has actively misled plaintiff; plaintiff 'in some extraordinary way' has been prevented from asserting his rights; or plaintiff has timely asserted his rights mistakenly in the wrong forum."   *Allen v. City of Chicago*, **No. 08-cv-6127, 2009 WL 4506317, at \*4 (N.D. Ill. Nov. 30, 2009) (citing** *Ciers v. O.L. Schmidt Barge Lines, Inc.*, **285 Ill.App.3d 1046, 221 Ill.Dec. 303, 675 N.E.2d 210, 214 (Ill.App.Ct. 1996))**.

The doctrine of equitable estoppel "requires the plaintiff to show that the defendant took steps deliberately to prevent the plaintiff from bringing a timely suit, whether by concealing the existence of the plaintiff's claim or by promising not to plead the statute of limitations."   *Beckel v. Wal-Mart Assoc., Inc.*, **301 F.3d 621, 622 (7th Cir. 2002)**.   A plaintiff may not escape application of the statute of limitations by way of equitable estoppel "if the obstructive behavior occurs *after* the plaintiff's inquiry has reached the point at which he has discovered, or by reasonable diligence should have discovered, that he has a claim upon which to found a suit[.]"   *Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, **610 F.3d 382, 385 (7th Cir. 2010) (emphasis in original)**.

The Court cannot conceive of a set of facts upon which equitable tolling applies to Plaintiff's false arrest claim relating to the 2008 arrest.   With respect to Plaintiff's argument that Defendant McKendry's withholding of the "street file" delayed him from bringing suit, this fact does not warrant equitable tolling.   Plaintiff alleges that the street

file was not disclosed to him until 2013 (*see* Doc. 151, p. 10) which was two years *after* Plaintiff filed suit in 2011.   Thus, it cannot be concluded that the concealment of this file *prevented* Plaintiff from discovering his claim.   It is obvious to the Court based on the Plaintiff's filing of his suit in 2011 that this evidence was not necessary for Plaintiff to discover his claim.   ***See e.g. Orange v. Burge*, 451 F.Supp.2d 957, 963-64 (2006) ("The concealment of any evidence did not prevent Orange from discovering any cause of action he may have had.")**.

Plaintiff also asserts that Defendant Hoell's "threats" against Plaintiff delayed him from filing suit.   In making this vague argument, Plaintiff directs the Court to his "Statement of Facts," which provides very little elaboration.   The Court is unclear as to how these alleged threats, which appear to relate to the 2009 cyberstalking claim, delayed Plaintiff from bringing suit for his 2008 false arrest claim.   In Plaintiff's fact section of his brief, he states that Defendant "Hoell called [Plaintiff's] attorney, Mike Mettes, threatening to revoke [Plaintiff's] bond conditions if [Plaintiff] exercised free speech or wrote anything on the Internet."   (Doc. 150, p. 7).   Without further elaboration, the Court is not clear as to how an alleged threat to keep Plaintiff from writing anything else on the Internet prevented him from filing suit for a 2008 false arrest charge.

Plaintiff also argues that Defendant McKendry's false statements played a significant role in Plaintiff's continued prosecution, thereby delaying him from bringing

suit, and thus the limitations period should be tolled during this proceeding. The Seventh Circuit has clearly rejected this argument when it held that "nothing in either federal law or Illinois law tolls or delays the running of an applicable statute of limitations on a 1983 claim until criminal proceedings are concluded."  *Evans v. City of Chicago*, **434 F.3d 916, 934 (7th Cir. 2006);** *see also Phelps v. Klipfel*, **No. 91-C-4742, 1991 WL 285279, at * 3 (N.D. Ill. Dec. 26, 1991) (the court held that the statute of limitations was not tolled by the criminal proceedings and false arrest claim was dismissed as time-barred)**.

Plaintiff has failed to allege the sort of "extraordinary circumstances that justify equitable tolling of the Statute of Limitations."  *Savoy v. Lyons*, **469 F.3d 667, 673 (7th Cir. 2006)**.   Likewise, while Plaintiff has alleged the Defendants' misconduct, and that he delayed in filing suit, he has failed to establish that the misconduct *caused* the delay.  *See, e.g. Ramirez v. City of Chicago*, **No. 08-C-5119, 2009 WL 1904416, at *5 (N.D. Ill. July 1, 2009) (finding that "a general fear of police reprisal" is not enough to apply equitable estoppel)**.   Consequently, neither the tolling of the statute of limitations based on Defendants' alleged misconduct nor equitable estoppel is appropriate here.  *See Shropshear v. Corp. Counsel of City of Chi.*, **275 F.3d 593, 597 (7th Cir. 2001)**.

In sum, the Court finds that tolling the statute of limitations on Plaintiff's false arrest claim for the 2008 arrest is inapplicable here.   Therefore, both the Chicago Defendants' and the Madison County Defendants' Motions for Summary Judgment regarding Plaintiff's 2008 False Arrest claim are **GRANTED** and the part of Count 3

relating to the 2008 arrest is dismissed with prejudice as untimely.

### B.  Plaintiff's State Law Claims

The Madison County Defendants assert that Plaintiff's state law false imprisonment claim for both arrests (Count 9) is barred by the statute of limitations. The Chicago Defendants also assert that this claim, as well as his intentional infliction of emotional distress claim (Count 8), and his state law conspiracy claim (Count 15), are barred by the statute of limitations.

Under the Illinois Local Governmental and Governmental Employees Tort Immunity Act ("Illinois Tort Immunity Act", 745 ILCS 10/1-101 et seq.), the applicable statute of limitations for civil actions commenced under state law against a local entity or its employees is one year from the date that the injury was received or the cause of action accrued.  *See* **745 ILCS 10/8-101 ("No civil action may be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued.")**.  Defendants clearly fall within the purview of the Illinois Tort Immunity Act.  *See Long v. Williams***, 155 F.Supp.2d 938, 943 (N.D. Ill. 2001) (applying the Illinois Tort Immunity Act to a civil action brought against police officers)**.  Thus, the relevant statute of limitations for Plaintiff's state law claims is one year.

### 1.  False Imprisonment (Count 9)

Plaintiff's claim for false imprisonment as to his 2008 arrest accrued on July 2,

2008, and his claim for false imprisonment as to his 2009 arrest accrued on July 19, 2009, the dates at which Plaintiff was arrested.   *See Sneed v. Rybicki*, **146 F.3d 478, 481 (7th Cir. 1998) (it is clear that false arrest and false imprisonment actions accrue at the time of the arrest or imprisonment);** *see also Wallace v. Kato,* **594 U.S. 384, 389 (2007) (false imprisonment ends when a victim becomes held pursuant to legal process- that is when the victim is "bound over by a magistrate or arraigned on charges.");** *see also Stanley v. City of Centreville*, **No. 08-cv-622, 2009 WL 779758, at *4 (S.D.Ill. March 23, 2009) ("the statute of limitations for Plaintiff's 'false imprisonment' claim began to run on the date that legal process was initiated against him, not on the date he was released from custody and the State of Illinois dropped charges against him.")**.[6] Because Plaintiff did not file his original Complaint until May 6, 2011, i.e. more than one year after each arrest, the Court finds that Plaintiff's false imprisonment claim as to both arrests is time-barred under the Illinois Tort Immunity Act.

The Court further notes that Plaintiff's response brief does not directly respond to the Chicago Defendants or Madison County Defendants argument regarding Count 9, that his false imprisonment claim is barred by the statute of limitations (*See* Docs. 150 & 151).   It therefore appears that Plaintiff is conceding to the Defendants on this issue. Accordingly, the Madison County Defendants' and Chicago Defendants' Motions for

---

[6] The Court is aware that there is conflicting case law within this circuit on the issue of when a false imprisonment claim accrues.  *See Cooper v. Butler*, **1995 WL 399009, at *5 (N.D. Ill. June 29, 1995) (briefly stating that the statute of limitations for false imprisonment accrues at Plaintiff's acquittal and release)**.  Neither party, however, has raised or argued this issue.  The Court, nonetheless, finds that after examining Illinois law, Illinois false imprisonment claims generally accrue at the time of arrest because that is when the plaintiff becomes aware, or at least reasonably should be aware, of his or her injury.

Summary Judgment as to Count 9 are **GRANTED** and Count 9 is dismissed with prejudice as untimely.

### 2. Intentional Infliction of Emotional Distress (Count 8)

Under Illinois law, the tort of intentional infliction of emotional distress ("IIED") is considered a "continuing tort" which "accrues, and the statute of limitations begins to run, at the time the last injurious act occurs or the conduct is abated." ***Feltmeier v. Feltmeier*, 207 Ill.2d 263, 285, 278 Ill. Dec. 228, 798 N.E.2d 75 (2003)**. Plaintiff's IIED claims accrued when he was found not guilty of the sexual assault on May 6, 2010, and when he was acquitted of the cyberstalking charge on December 6, 2010. ***See, e.g., Cannon v. Burge*, No. 05-c-2192, 2006 WL 273544, at \*10 (N.D. Ill. Feb. 2, 2006) (IIED claim accrued when charges against Plaintiff were dismissed)**. He then filed his initial complaint on May 6, 2011- within the one-year statute of limitations as to both arrests.   His IIED claim is timely.

### 3. Malicious Prosecution (Counts 6 & 7)

Under Illinois law, a cause of action for malicious prosecution accrues when the criminal proceeding on which it is based is terminated in the plaintiff's favor. ***See e.g., Ferguson v. City of Chicago*, 213 Ill.2d 94, 99, 289 Ill.Dec. 679, 820 N.E.2d 455 (2004)**. As previously stated, Plaintiff was found not guilty of the sexual assault on May 6, 2010, and he was acquitted of the cyberstalking charge on December 6, 2010.   He filed his initial complaint on May 6, 2011- within the one-year statute of limitations as to both

arrests.   Thus, Plaintiff's malicious prosecution claims are timely.   *See, e.g., Tabet v. Mill Run Tours, Inc.*, **10-cv-4606, 2013 WL 1103695, at \*3 (N.D. Ill. March 15, 2013) (Plaintiffs' claims accrued when they were acquitted of the criminal charges against them)**.

### 4.   Conspiracy (Count 15)

With respect to Plaintiff's state law conspiracy claim (Count 15), the Chicago Defendants allege that this claim is also barred by Illinois Tort Immunity Act.   In the FAC, Plaintiff alleges that his underlying false imprisonment, malicious prosecution, and IIED claims are the basis of his conspiracy claim.   (*See* Doc. 46, p. 49-50).   Although Plaintiff's false imprisonment claim is time-barred, his other state law claims are timely. As such, Plaintiff's conspiracy claim based on his timely state law claims (IIED and malicious prosecution) is also timely.   The Court **GRANTS** the Chicago Defendants Motion for Summary Judgment as to Plaintiff's civil conspiracy claim based on his untimely false imprisonment claim, but **DENIES** Chicago Defendants' motion as to Plaintiff's timely claims.   Plaintiff's conspiracy claim with respect to the false imprisonment claim is dismissed with prejudice as untimely.

### 5.   Unlawful Strip Search Claims Against John Does (Count 14)

Plaintiff brought state law unlawful strip search claims against two John Does, or unidentified police officer defendants.   John Doe No. 1 is alleged to be a Madison County Sheriff Deputy and John Doe No. 2 is alleged to be a Chicago Police Officer.

Both the Chicago Defendants and Madison County Defendants argue that these John Doe defendants should be dismissed from the case because Plaintiff has failed to name them and the claims against them are time-barred.

A plaintiff may request leave to proceed initially against defendants named as "John Doe" or "Jane Doe" when he does not know the names of the persons he wishes to sue. This, however, does not toll the statute of limitations until such time as a named defendant may be substituted. *See Martinez v. Wallace*, **182 F.3d 922 (7th Cir. 1999)**. Plaintiff has the responsibility of taking the steps necessary to identify the officer responsible for his injuries, a responsibility substantially supported by the discovery mechanisms available to him during the pendency of the lawsuit. *Strauss v. City of Chicago*, **760 F.2d 765, N 6 (7th Cir. 1985)**.

Although in Plaintiff's FAC he asserts an unlawful strip search claim against both sets of Defendants, it has come out via briefing that he is only alleging that two officers strip searched him in connection with the 2009 arrest, the John Does (*See* Doc. 46). Plaintiff alleges that Defendant John Doe No. 2 was an officer that strip-searched him on July 19, 2009 at his apartment in Chicago, Illinois (*See* Doc. 46, p. 17). He was held overnight in a Chicago Police Department holding cell and then transferred to the Madison County Jail where he alleges that he was strip searched again by Defendant John Doe No. 1 (*See* Doc. 46, p. 17). Plaintiff first named these individuals, "John Doe No. 1" and "John Doe No. 2," in his FAC on September 25, 2011. He never named the

John Does in his original Complaint, nor did he include allegations of the 2009 strip searches.   Since the filing of the FAC, Plaintiff has not amended his FAC to actually name these officers.

Defendants are correct in arguing that Plaintiff cannot avail himself of Rule 15(c)'s provisions allowing for "relation back" to the original complaint.   Here, because the statute of limitations has already expired, Plaintiff cannot invoke the relation back principles of Rule 15(c) to replace John Doe defendants with named defendants.   *See Worthington v. Wilson*, **8 F.3d 1253, 1256-57 (7th Cir. 1993)**.

With respect to Plaintiff's argument that he tried to obtain the names of the John Does from Defendants but was unsuccessful, this argument is unavailing.   The Court recognizes that the Seventh Circuit has held that that where a plaintiff is appearing *pro se*, "he could hardly be expected to discover the names of the arresting officers through the discovery route" and therefore, a district judge should order their disclosure.   *See Maclin v. Paulson*, **627 F.2d 83, 87 (7th Cir. 1980)**.   Plaintiff, although litigating on his own behalf, is actually a licensed attorney who has litigation experience.   There should be no reason why he could not have properly used discovery mechanisms to obtain the names of the John Does.[7]   Consequently, these "unknown" John Doe defendants are terminated.

---

[7] Further, the Court points out that in *Maclin*, the Seventh Circuit found that the District Court should have ordered the disclosure of the John Doe's after the District Court dismissed the John Doe officers on the ground that service of summons upon them was insufficient under Rule 4(d)(1) of the Federal Rules of Civil Procedure.   Here, Plaintiff's claims against these John Doe officers are actually time-barred.   As the Seventh Circuit in *Maclin* recognized in that case, "there [was] no statute of limitations problem."   **Id.** at **88**.

Plaintiff asserts in his response brief that two other individuals, Newman and Melson "conducted a visual inspection of Plaintiff in the nude and saw his genital areas, which is demeaning, dehumanizing, undignified, and humiliating."   (*See* Doc. 151, p. 14).   These officers are first mentioned in Plaintiff's response to the Chicago Defendant's Motion for Summary Judgment (*See* Doc. 151, p. 6).   Although Plaintiff now seems to indicate that these officers are the officers that strip searched him in 2009 (possibly he found out the identities of the John Doe's without notifying the Court), they have not been named as defendants nor are they mentioned anywhere in the FAC.   As the statute of limitations has already run in this case, Plaintiff may not add these individuals as defendants.

The Court thus **GRANTS** the Chicago Defendants' Motion for Summary Judgment and the Madison County Defendants' Motion for Summary Judgment as to Plaintiff's unlawful strip search claim (Count 14).   Count 14 is dismissed with prejudice and John Doe No. 1 and John Doe No. 2 are dismissed as defendants.

### III.    Eleventh Amendment Sovereign Immunity

Plaintiff sued Former Madison County State's Attorney Mudge, Assistant State's Attorney Hoell, and Assistant State's Attorney Chapman ("State's Attorney Defendants") in their individual and official capacities.[8]   The Madison County State's Attorney Defendants argue that the claims against them in their *official* capacities are

---

[8] On July 30, 2013, Plaintiff moved to voluntarily dismiss without prejudice his official capacity claims against Madison County State's Attorney Thomas Gibbons and the Madison County State's Attorney's Office pursuant to FED.R.CIV.P. 41(a)(2) (Doc. 155).   The Court granted this motion on July 31, 2013 (Doc. 156).

barred by the Eleventh Amendment.

In Plaintiff's response brief, he does not specifically contest the State's Attorney Defendants' argument that the claims against them in their official capacity are barred by the Eleventh Amendment.   A suit against a state official in his official capacity is, in essence, a suit against the State.   *Power v. Summers*, **226 F.3d 815, 818 (7th Cir. 2000)**. Such suit is barred by the Eleventh Amendment unless: (1) Congress has abrogated the State's immunity from suit, (2) a State has waived its immunity and consented to suit, or (3) the suit is one for prospective injunctive relief and then it may proceed in limited circumstances, as outlined in *Ex Parte Young*, 209 U.S. 123, 159-60 (1908).   ***See Sonnleitner v. York*, 304 F.3d 704, 717 (7thy Cir. 2002)**.   None of these exceptions apply here.   Thus, the Court holds that the claims against these defendants in their official capacities are barred by the Eleventh Amendment.   ***See Garcia v. City of Chicago*, 24 F.3d 966, 969 (7th Cir. 1994)**.   The Madison County Defendants' motion for summary judgment as to Plaintiff's official capacity claims against the State's Attorney Defendants is **GRANTED**.   The claims against Defendant Hoell, Defendant Chapman and Defendant Mudge in their official capacity are dismissed with prejudice.

**IV.   Plaintiff's § 1983 Brady Claims for the 2008 and 2009 Arrests (Counts 1 & 2)**

In Counts 1, 2, and part of 22 of Plaintiff's FAC, Plaintiff claims that in both his 2008 and 2009 criminal cases, Defendants "deliberately fabricated false statements and deliberately obstructed justice," and "provided false allegations that were the basis of

the criminal complaint and/or withheld exculpatory evidence" (Doc. 46, p. 39-40, 60-61). Both sets of Defendants have moved for summary judgment arguing that these allegations are insufficient to establish liability against them.

A *Brady* violation occurs when the prosecution fails to turn over exculpatory or impeaching evidence, thus violating a defendant's due process rights. ***Youngblood v. West Virginia*, 547 U.S. 867, 869, 126 S.Ct. 2188, 165 L.Ed.2d 269 (2006) (citing *United States v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985))**. While most commonly viewed as a prosecutor's duty to disclose to the defense, the duty extends to the police and requires that they similarly turn over exculpatory/impeaching evidence to the prosecutor, thereby triggering the prosecutor's disclosure obligation. ***Id.* at 870**. This violation can be broken down into three basic elements: "(1) the evidence at issue is favorable to the accused, either being exculpatory or impeaching; (2) the evidence must have been suppressed by the government, either willfully or inadvertently; and (3) there is a reasonable probability that prejudice ensued – in other words, 'materiality.'" ***Carvajal v. Dominguez*, 542 F.3d 561, 566-67 (7th Cir. 2008) (quoting *Youngblood*, 547 U.S. at 869-70)**. "Evidence is 'material' 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" ***Id.* at 567 (quoting *Strickler v. Greene*, 527 U.S. 263, 280, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)**.

The Seventh Circuit has held that "to state a *Brady* violation claim when the

criminal trial ended in acquittal, if such claim exists, the plaintiff would need to show that 'the decision to go to trial would have been altered by the desired disclosure.'" *Mosley v. City of Chicago*, **614 F.3d 391, 396 (7th Cir. 2010)**.

Specifically, Plaintiff alleges that Defendant McKendry lied and made false statements during the motion to suppress and criminal trial in the 2008 case. The Constitution "does not extend so far as to provide relief if a police officer makes a false statement to a prosecutor." *Carvajal*, **542 F.3d at 567 (quoting *Harris v. Kuba*, 486 F.3d 1010, 1017 (7th Cir. 2007); *Sornberger v. City of Knoxville*, 434 F.3d 1006, 1029 (7th Cir. 2006) ("The Constitution does not require that police testify *truthfully* . . . ") (emphasis in original)**. All that the Constitution requires is a process that will enable jurors to sort out the truth. *See Sornberger*, **434 F.3d at 1029 (quoting *Biue v. McAdory*, 341 F.3d 623, 625-626 (7th Cir. 2003) (". . . the constitutional rule is that the defendant is entitled to a trial that will enable jurors to determine where the truth lies") (internal quotations omitted))**.

Plaintiff also alleges that Defendant McKendry failed to disclose his "street file" to Plaintiff or his attorneys. Plaintiff has put forth no evidence nor has he made any argument that "the decision to go to trial would have been altered by the desired disclosure." *Mosley*, **614 F.3d at 397**. Under *Brady*, discoverable materials include that which is "favorable" to the defense and "material" to guilt or punishment. *Id*. There is nothing in the record which indicates that anything in the notes sought would meet

this standard.   In this case, the Court does not find that the evidence contained in the street file, if known, would have kept the prosecution from moving forward with trial. Further, Defendant McKendry, who was the original source of the notes contained in the "street file" in question was available and cross-examined by defense counsel at trial. Any information favorable to the defense or material to guilt or punishment could have been elicited in open court.

Plaintiff's *Brady* claim relating to his 2009 criminal case fails because Plaintiff's 2009 criminal case never went to trial, it was instead dismissed prior to trial, *nolle prosequi*.  *Brady* identifies a *trial right*, particularly because it mandates the disclosure only of evidence that "is material either to guilt or to punishment."  ***Newsome v. McCabe*, 256 F.3d 747, 752 (7th Cir. 2001)**.  This trial right is violated only when the government fails to turn over material evidence in time for a defendant to make use of it at trial.  ***See Fields v. Wharrie*, 672 F.3d 505, 513-14 (7th Cir. 2012);** *see also **Bielanski v. County of Kane*, 550 F.3d 632, 645 (7th Cir. 2008)**.   Because Plaintiff never had a trial, the Defendants could not have failed to turn over evidence in time for him to use it, nor could any failure to turn over evidence have been material as Plaintiff was never tried, much less convicted.

Accordingly, both the Chicago and Madison County Defendants' motions for summary judgment are **GRANTED** with respect to Plaintiff's Section 1983 *Brady* Claims for the 2008 and 2009 arrests.   Counts 1 and 2 (and the part of Count 22 that also appears

to assert this claim) are dismissed with prejudice.

**V.    Plaintiff's State Law Malicious Prosecution Claims Against Both Defendants**

Plaintiff asserts in his FAC state law malicious prosecution claims against both sets of Defendants for both the 2008 and 2009 arrests (*See* Doc. 46, p. 43-44).   The Chicago Defendants assert that Plaintiff cannot proceed against them on a malicious prosecution theory because no City of Chicago employee "commenced or continued" the 2008 criminal proceeding against Plaintiff.   The Madison County Defendants assert that Plaintiff's malicious prosecution claims fail because probable cause existed for both arrests.   Plaintiff's main argument is that the Defendants lacked probable cause for both arrests.

Under Illinois law, to state a cause of action for malicious prosecution, a plaintiff must allege facts showing: (1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceedings; (4) the presence of malice; and (5) damages resulting to the plaintiff. ***Ferguson v. City of Chicago*, 343 Ill.App.3d 60, 277 Ill.Dec. 316, 795 N.E.2d 984, 986 (2003)**.   The absence of any of these elements "bars a plaintiff from pursuing [his] claim." ***Swick v. Liataud*, 169 Ill.2d 504, 215 Ill.Dec. 98, 662 N.E.2d 1238, 1242 (Ill. 1996)**.   It follows that the existence of probable cause is a "complete defense" to a malicious prosecution suit. ***Cervantes v. Jones*, 188 F.3d 808, 810-11 (7th Cir. 1999); *see also Ely v. National Super***

*Markets, Inc.*, **149 Ill.App.3d 752, 758, 102 Ill.Dec. 498, 500 N.E.2d 120 (1986)**.

Illinois courts have defined "probable cause" with respect to a malicious prosecution involving criminal proceedings as "a state of facts that would lead a person of ordinary caution and prudence to believe, or entertain an honest and strong suspicion, that the person arrested committed the offense charged." *Johnson v. Target Stores, Inc.,* **341 Ill.App.3d 56, 274 Ill.Dec. 795, 791 N.E.2d 1206, 1219 (Ill.App.Ct. 2003) (internal quotation marks and citations omitted)**. "There is no need to verify the veracity of each item of information obtained; one need only act with reasonable prudence and caution in proceeding." *Ross v. Mauro Chevrolet,* **369 Ill.App.3d 794, 308 Ill.Dec. 248, 861 N.E.2d 313, 320 (Ill. App. Ct. 2006)**. It is the state of mind of the one commencing the prosecution, and not the actual facts of the case or the guilt or innocence of the accused, which is at issue. *Rodgers v. Peoples Gas, Light & Coke Co.,* **315 Ill.Ap.3d 340, 248 Ill.Dec. 160, 733 N.E.2d 835, 842 (2000)**.

"*Prima facie* probable cause" is established by return of indictment by grand jury, but it is not conclusive evidence of probable cause and it may be rebutted by other evidence such as proof that indictment was obtained by false or fraudulent testimony before grand jury or other improper or fraudulent means. *Freides v. Sani-Mode Mfg. Co.,* **33 Ill.2d 291, 211 N.E.2d 286 (1965)**.

The Court begins its analysis with the issue of probable cause.[9] With respect to

---

[9] In Plaintiff's criminal case, he filed a motion to suppress evidence taken from his apartment. That motion was denied based upon a judicial finding of probable cause (Doc. 145-4). The Court will not apply collateral estoppel here, as Plaintiff was acquitted of the 2008 charge. *See Simpkins v. City of*

the 2008 arrest, Defendant Chapman [10] testified that, after reviewing the police investigation, she found the facts sufficient to establish probable cause (Doc. 150-5, p. 7). In her deposition, she clearly set forth the facts establishing probable cause, which began with the testimony obtained from the victim Jane Doe reporting that a sexual assault had occurred (*Id.*).   The information given to Defendant Vucich was that Jane Doe had been assaulted, she had jumped from her assailant's vehicle and that her cell phone and purse (which contained personal and identifying information) were left in the vehicle with him.   The officers were also aware that Jane Doe met Plaintiff under suspicious pretenses, i.e. by providing false names to one another and by using a pre-paid cell phone (Doc. 150-2, p. 76).   Two different neighbors observed Jane Doe immediately after the occurrence and described her to law enforcement as being a person who was obviously very upset (Doc. 150-5, p. 7).   The officers also listened to Jane Doe's 911 call, when she was hysterical and explaining that a person was trying to hurt her (Doc. 150-5, p. 19).   Defendant Vucich testified that Jane Doe's admissions appeared to be credible (Doc. 150-2, p. 75), and that a review of the evidence appeared to corroborate her complaint of sexual assault.   The Court finds that this information would lead a

---

*Belleville*, No. 09-cv-912, 2010 WL 1849348, at *6 (S.D.Ill. May 7, 2010) (the Illinois Supreme Court has held that "collateral estoppel should not apply to a pretrial finding in a criminal case where the defendant is ultimately acquitted and therefore has no opportunity to challenge the pretrial finding on appellate review") (citing *People v. Mordican*, 64 Ill.2d 257, 1 Ill. Dec. 71, 356 N.E.2d 71, 74 (1976)).   The Court further notes that Plaintiff's acquittal in his criminal case does not imply a lack of probable cause for the original arrest.   *See People v. Jackson*, 232 Ill.2d 246, 328 Ill.Dec. 1, 903 N.E.2d 388, 403 (2009) ("whether probable cause exists is governed by commonsense considerations, and the calculation concerns the probability of criminal activity, rather than proof beyond a reasonable doubt").

[10]  Plaintiff refers to Defendant Amy Chapman throughout his response brief as "Gabriel."   The Court has confirmed through Ms. Chapman's deposition and the Madison County Defendant's brief (Doc. 154), that Chapman was her former name.   For the sake of consistency, and due to the fact that she is named in the FAC as "Amy Chapman," the Court will continue to refer to her as Defendant Chapman.

reasonable officer to be suspicious, in which case the officer would have a further duty to investigate.

Based upon this evidence, the officers continued the investigation by filling out a "Mandatory Information for Exigent Circumstances Request Form" (Doc. 150-7), in order to use Plaintiff's pre-paid cell phone information (registered to a "John Rogers at P.O. Box 4356 Los Angeles, California) to track down his general location (Doc. 150-7). Section 18 U.S.C. § 2702(b)(8) allows a telephone carrier to provide historical records "if the provider, in good faith, believes that an emergency involving danger or death or serious physical injury to any person requires disclosure without delay of communication relating to the emergency."   Based on the facts known to the officers at that time, the Court finds them to have had a good faith belief of danger.   This is especially true in light of the fact that the officers knew that Plaintiff had Jane Doe's possessions that contained personal and identifying information.

Plaintiff's cell phone "pinged" from a certain latitude and longitude, indicating a radius of nine meters where Plaintiff could be located (Doc. 145-8).   Upon arriving at this location, Defendant McKendry observed a package at the front door of one of the apartments in this area.   The package read the name "Meanith Huon."   The officers ran that name through the Illinois Secretary of State computer system and obtained Plaintiff's driver's license photo.   The officers were then able to match Plaintiff's name and physical description from the Secretary of State to the video surveillance obtained

from the Broadway Oyster Bar depicting Plaintiff on the day of the incident.   Under these circumstances, probable cause to arrest was clearly established.   *See, e.g., People v. Smith*, **215 Ill.App.3d 1029, 159 Ill.Dec. 517, 576 Ill.Dec. 517, 576 N.E.2d 186, 192 (Ill.App.Ct. 1991) (there was probable cause to arrest defendant who fit general description of suspect, looked like a police sketch, and was in vicinity of area where crimes occurred)**.

Plaintiff argues that Defendant McKendry had no probable cause to arrest him because "McKendry did not interrogate Meanith, did not corroborate Marconi's report, and did not find [Jane Doe's] belongings" (Doc. 151, p. 9).   These arguments are irrelevant to the probable cause analysis.   Even without interrogating Plaintiff or corroborating Marconi's report, probable cause existed to arrest Plaintiff.   The Court finds that probable cause existed based upon the evidence cited above.   Further, whether or not Jane Doe's belongings were found after the fact is irrelevant as a probable cause determination is based on the officer's state of mind at that time, not the actual facts of the case.   *See Rodgers v. Peoples Gas, Light & Coke Co.*, **315 Ill.App.3d 340, 248 Ill.Dec. 160, 733 N.E.2d 835, 842 (2000)**.

With respect to the 2009 arrest, the Court also finds that probable cause existed for the arrest for cyberstalking and harassment of a witness.[11]   Specifically, Jane Doe came across blog postings on the internet that were authored by Plaintiff and she believed

---

[11]  Pursuant to 720 ILCS 5/12-7.5, "[a] person commits cyberstalking when he or she engages in a course of conduct using electronic communication directed at a specific person, and he or she knows or should know that would cause a reasonable person to: (1) fear for his or her safety or the safety of a third person; or (2) suffer other emotional distress."

them to be directed at her.   Defendant Chapman testified at her deposition that she believed these entries were obviously directed at Jane Doe.   For example, the blog postings referred to "the last woman who kissed me from Carlinville," and often referred to the name "Dede" (Jane Doe's e-mail address for the Craiglist.com posting), and other references unique to Jane Doe that Jane Doe would know about from her encounter with Plaintiff that took place on June 29, 2008 (Doc. 150-5, p. 88).   Defendant Vucich explained that Jane Doe was obviously disturbed by these blog postings, as they were indirectly communicating with her and trying to send her messages.   Specifically, Jane Doe felt emotionally distressed and threatened by the nature of the blog postings (Doc. 150-2, p. 94-95, Doc. 150-5, p. 92).   The Court has also reviewed Defendant Vucich's Affidavits in support of the search warrant, which was issued on July 17, 2009 (Doc. 145-12), as well as samples of the blog posts that have been submitted to the Court. Based on the totality of the evidence, the Court finds that the evidence does in fact support a finding of probable cause for the cyberstalking and witness harassment arrest.[12]

The Court finds that the material evidence in the record supports a finding of probable cause for both arrests.   Although Plaintiff purports to rebut or otherwise negate probable cause in this case, he has failed to do so.   Based upon the testimony of the witnesses, the police reports, and the search warrants, there is no indication that the

---

[12] Because the existence of probable cause bars a claim for malicious prosecution as to both arrests, the Court need not delve into an absolute immunity analysis as to each State's Attorney Defendant with respect to each aspect of the malicious prosecution claim.   Notwithstanding that fact, the Court notes that it is likely that these defendants would have been shielded by absolute prosecutorial immunity.

prosecution proceeded improperly at any point; there is every indication that the police acted with "reasonable prudence and caution" in pursuing these charges against Plaintiff.  *See Ross v. Mauro Chevrolet*, **369 Ill.App.3d 794, 802, 308 Ill. Dec. 248, 861 N.E.2d 313 (2006)**.  Because probable cause existed for both the 2008 and 2009 arrests, Plaintiff is barred from bringing malicious prosecution claims as to these arrests. Accordingly, both Defendants' Motions for Summary Judgment as to Plaintiff's state law malicious prosecution claims against them (Counts 6 & 7) are **GRANTED.**  Counts 6 and Count 7 are dismissed with prejudice.

### VI.   Plaintiff's § 1983 False Arrest Claim for the 2009 Arrest

Plaintiff alleges that he was falsely arrested in violation of the Fourth Amendment because his arrest was not supported by probable cause.   The crux of a false arrest claim is that an individual was arrested without justification.   Thus, probable cause for the arrest is an absolute bar to a claim of false arrest asserted under the Fourth Amendment and § 1983.  *McBride v. Grice*, **576 F.3d 703, 707 (7th Cir. 2009)**.   For the reasons previously stated, the Court has finds that there was probable cause for Plaintiff's 2009 arrest.   This finding bars Plaintiff's false arrest claim.   Accordingly, both Defendants' Motions for Summary Judgment as to Plaintiff's § 1983 false arrest claim for the 2009 arrest (Count 3) are **GRANTED.**   Count 3 is dismissed with prejudice.

### VII.   Plaintiff's Conspiracy Claims

Plaintiff alleges three conspiracy claims.   Count 15 alleges a conspiracy claim

under Illinois state law, Count 16 alleges a conspiracy claim under 42 U.S.C. § 1985(3), and Count 22 alleges a conspiracy claim under 42 U.S.C. § 1983.   Defendants assert that Plaintiff has failed to allege sufficient evidence of conspiracy of any kind (Doc. 145, p. 14).

Under Illinois law, a civil conspiracy must include (1) an agreement by two or more parties for the purpose of accomplishing some concerted action either an unlawful purpose, and (2) at least one of the parties to the agreement commits an act in furtherance of that agreement.   *Adcock v. Brakegate, Ltd.*, **164 Ill.2d 54, 62, 206 Ill.Dec. 636, 645 N.E.2d 888 (Ill. 1994)**.   In support of his conspiracy argument, Plaintiff asserts that "McKendry gave false testimony that contributed to Meanith's continued prosecution and Hoell provided the 3-page summary" (Doc. 151, p. 19).   Plaintiff then directs the Court to his statement of facts for further elaboration.   In his statement of facts, Plaintiff eludes to the fact that Defendant Hoell and Defendant Chapman gave Defendant McKendry a 3-page summary before the motion hearing and trial and Defendant McKendry testified based on this document, not just his personal knowledge (Doc. 151, p. 4).   These vague allegations, without more, are insufficient to establish the elements of conspiracy between Defendant McKendry, Defendant Hoell and Defendant Chapman.[13]   Accordingly, Defendants' motions for summary judgment as to the state

---

[13] The Court must point out the degree to which poor briefing has added needlessly to the time and effort required by this Court to consider the Defendants' motions for summary judgment.   In the argument section of his brief, Plaintiff makes general assertions, augmented with various citations to the record. Sometimes these citations direct the Court to Plaintiff's statement of fact section in his brief or to a range of 240 or more paragraphs in Plaintiff's factual section of his FAC.   Often times Plaintiff will haphazardly

law conspiracy claim are **GRANTED**.   Count 15 is dismissed with prejudice.

To establish a civil conspiracy claim under Section 1983, Plaintiff must show that defendants agreed to deprive him of his constitutional rights.   *See Reynolds v. Jamison*, **488 F.3d 756, 764 (7th Cir. 2007)**.   A claim for conspiracy "is not an independent basis of liability in § 1983 actions." *See Smith v. Gomez*, **550 F.3d 613, 617 (7th Cir. 2008)**.   Thus, if a plaintiff fails to prove an underlying constitutional injury, any attendant conspiracy claim will necessarily fail.   *See Cefalu v. Village of Elk Grove*, **211 F.3d 416, 423 (7th Cir. 2000)**.

Plaintiff alleges that the Madison County Defendants conspired to retaliate against Plaintiff by falsely arresting him and prosecuting him in 2009.   Because the Court has found that the defendant officers had probable cause to arrest Plaintiff for the 2009 arrest (and both arrests for that matter), Plaintiff's attendant claim for conspiracy also fails because there is no underlying constitutional deprivation of Plaintiff's rights to form the basis for liability under Section 1983.   Therefore, Defendants motions for summary judgment as to the § 1983 conspiracy claim are **GRANTED**.   The part of Count 22 that alleges a conspiracy claim pursuant § 1983 is dismissed with prejudice.

In order to establish a claim under § 1985(3), a conspiracy must have been motivated by racial or other class-based animus.   *Griffin v. Breckenridge*, **403 U.S. 88,**

---

refer to random facts and names with no context or background, relying instead on a series of string cites to depositions and other documents in the record, and expecting the Court to figure it out.   *See Estate of Moreland v. Dieter*, **395 F.2d 747, 759 ("Perfunctory or underdeveloped arguments are waived.")**.   While this has been extremely frustrating, the Court has attempted to sort through Plaintiff's various citations to the facts in order to properly consider Defendants' motions, as well as research the applicable law. Nonetheless, the Court declines to scour the record or accept arguments that are not supported by the record.

**100-102, 91 S.Ct. 1790, 1797-1798, 29 L.Ed.2d 338 (1971);** *Bell v. City of Milwaukee*, **746 F.2d 1205, 1233 (7th Cir. 1984)**.   Moreover, the class distinction must be one that is as invidious as those that have been historically suspect, such as race, national origin, sex or religion.  *See D'Amato v. Wisconsin Gas Co.*, **760 F.2d 1474, 1485-86 (7th Cir. 1985)**. The Chicago Defendants challenge that Plaintiff has no cognizable § 1985(3) claim, because the record is devoid of any evidence that any action taken was done in furtherance of a conspiracy rooted in racial animus.

Plaintiff asserts that both sets of Defendants conspired against him based on racial animus when the Madison County prosecutors "chose to prosecute a Cambodian-American Meanith and an African-American Oduwole, both of whom had no political connections to Madison County . . . [h]owever, . . . did not prosecute high profile white males, such as Tom Lakin and Fred Bathon" (Doc. 151, p. 20).   The Court finds that this observation is insufficient to indicate a class-based as opposed to individually-based animus that would give rise to a cause of action under § 1985(3). Further, to the extent that this Section 1985(3) claim is based on the false arrest or malicious prosecution claims, it is barred based on the Court's finding of probable cause. Since Section 1985(3) is violated only if the plaintiff is "deprived of having and exercising any right or privilege of a citizen of the United States," and since there is no right *not* to be arrested if there is probable cause, the Court's conclusion that there was probable cause to arrest bars this Section 1985(3) claim based on the false arrest and

malicious prosecution charges.    Accordingly, Defendants motion for summary judgment as to Plaintiff's § 1985(3) conspiracy claim is **GRANTED**.    Count 16 is dismissed with prejudice.

**VIII.   Plaintiff's Defamation Claims**

Plaintiff brings a state law defamation claim for the 2009 arrest (Count 10) against Defendant Mudge, Defendant Wells, Madison County and the Madison County Sheriff Department.   He also brings a defamation *per se* claim (Count 12) against these same defendants.   Plaintiff also asserts a § 1983 defamation claim (Count 22) against all of the Madison County Defendants.

The Madison County Defendants argue that the § 1983 defamation claim fails because allegedly defamatory statements during a press conference do not violate the Constitution.   With respect to the state law defamation claims, Defendants argue that the statements were absolutely privileged and cannot support a defamation action.

To establish a claim for defamation under Illinois law, a plaintiff must show: (1) that a defendant has made a false statement about the plaintiff; (2) that there was an unprivileged publication to a third party by the defendant; and (3) the publication damaged the plaintiff.  ***Krasinski v. United Parcel Service, Inc.,*** **124 Ill.2d 483, 125 Ill.Dec. 310, 530 N.E.2d 468, 471 (1988)**.   There are two types of defamation under Illinois law: *per se* and *per quod*.   A statement is defamatory *per se* if the defamatory character is apparent on the face of the communication; that is, when the words used are

so obviously and materially harmful to the plaintiff that injury to his or her reputation may be presumed.   *Kolegas v. Heftel Broadcasting Corporation, et al.*, **154 Ill.2d 1, 10, 180 Ill.Dec. 307, 312, 607 N.E.2d 201, 206 (1992)**.   Courts have recognized four categories of statements that are defamatory *per se*: (1) words which impute the commission of a criminal offense; (2) words that impute infection with a loathsome communicable disease; (3) words that impute an inability to perform or want of integrity in the discharge of duties of office or employment; or (4) words that prejudice a party, or impute lack of ability, in his or her trade, profession or business.   *Id*.   If a defamatory statement is actionable *per se*, the plaintiff need not plead or prove actual damage to his or her reputation to recover.   *Moore v. People for the Ethical Treatment of Animals, Inc.*, **402 Ill.App.3d 62, 68, 342 Ill.Dec. 321, 932 N.E.2d 448 (2010)**.

Plaintiff asserts that Defendant Mudge's statement to the press that Jane Doe was credible was defamatory (Doc. 150, p. 19).   This statement was made subsequent to Plaintiff's acquittal of the sexual assault charge (Doc. 150, p. 7).   Plaintiff alleges that Defendant Mudge made this statement knowing that the 2009 charges were pending and that these charges related to Jane Doe (Doc. 150, p. 7).   If the statement cannot reasonably be interpreted as stating actual facts about a person, it is constitutionally protected speech.   *Milkovich v. Lorain Journal Co.*, **497 U.S. 1, 20, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990)**.   More directly, "if it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in

possession of objectively verifiable facts, the statement is not actionable. " *Haynes v. Alfred A. Knopf, Inc.*, **8 F.3d 1222, 1227 (7th Cir. 1993)**.      Here, the Court finds this statement that Jane Doe was credible to be nonactionable opinion.   It is apparent that Defendant Mudge was expressing a subjective view rather than claiming to be in possession of objectively verifiable facts.

Plaintiff also asserts that Defendant Wells wrote a press release in 2008- approved by Defendant Herz - that falsely accused Plaintiff of kidnapping and sexual assault (Doc. 150, p. 8).   The Court has read this press release (Doc. 150-31), and finds that Plaintiff has not shown that the statements made within it are defamatory.   First of all, the press release explicitly states that Plaintiff was charged with "two counts of criminal sexual assault, two counts of criminal sexual abuse, and one count of unlawful restraint" (Doc. 150-31).   These facts are true.

Further, the factual information contained within that press release was based on information relayed to the police from a caller and Jane Doe, and the language of the press release makes this point clear.   Specifically, the press release indicates that the "*caller reported* that a female was at their home reporting that she had been kidnapped" (Doc. 150-31) (emphasis added).   Plaintiff has not alleged nor offered any evidence indicating that this statement was false, i.e. that the caller did not actually make that statement to the police.   Thus, with respect to this statement, Plaintiff has failed to establish the first prong of the defamation analysis, that defendants made a false

statement.

Plaintiff further asserts that Defendant Hertz and Defendant Wells were likely the source of the defamatory statement made in 2009 stating that Plaintiff said "God wanted him to be with [Jane Doe]" (Doc. 150, p. 19).   Here, even when viewing the facts in the light most favorable to Plaintiff, he has not alleged that Defendant Hertz and Defendant Wells *made* these false statements.   Instead, he asserts that they were "likely the source" of these defamatory statements.   This is insufficient to establish the first prong of the defamation analysis.

Plaintiff has also failed to demonstrate that defamation *per se* exists here.   The Court assumes that for Plaintiff's defamation *per se* claim, he is referring to the claim that the press release written by Defendant Wells and approved by Defendant Hertz accuses him of kidnapping and criminal sexual assault, as this would arguably impute the commission of a crime.   As previously stated, Plaintiff has not set forth evidence that this statement is actually false.   A statement is not actionable as defamation *per se* if it is actually true.   ***See Moore*, 402 Ill.App.3d at 71 (a defendant is not liable for a defamatory statement if the statement is true)**.   Further, the claim that Defendant Mudge stated that Jane Doe was credible is nonactionable opinion that cannot serve as the basis for a defamation *per se* claim.

The Court further notes that it had to speculate as to which particular statements are alleged by Plaintiff to even constitute defamation *per se*.   "Like a common law fraud

claim, a defamation *per se* claim must be pled with a heightened level of precision and particularity.     This higher standard is premised upon an important policy consideration, namely, that a properly pled defamation per se claim relieves the plaintiff of proving actual damages." **Green v. Rogers, 234 Ill.2d 478, 461, 334 Ill.Dec. 624, 917 N.E.2d 450 (2009)**.   Because Plaintiff has set forth no specific argument as to which claims specifically constitute defamation *per se* and why they constitute defamation *per se*, his claim also fails for this reason.[14]

Lastly, with respect to Plaintiff's § 1983 claim for constitutional defamation, mere defamation even by state actor is not actionable under the Constitution.   ***See Hedrich v. Bd. of Regents of the University of Wisconsin System, 274 F.3d 1174, 1184 (7th Cir. 2001)**.   In order to "cross the line from mere defamation" to a constitutional violation, a plaintiff must offer facts to show that the defendant's conduct and/or statements were "so stigmatizing" that they constitute "infringement of a liberty interest."  **Id.**   *Paul v. Davis* established what some circuits have called a "stigma plus" test, which the Seventh Circuit has phrased as follows: "defamation could in some instances be actionable under section 1983 if it was linked to the deprivation of 'a right previously recognized under state law.'" **Ross v. Yordy Constr. Co. v. Naylor, 55 F.3d 285, 287-88 (7th Cir. 1995) (citing Paul v. Davis, 424 U.S. 693, 708, 96 S.Ct. 1155, 47 L.Ed.2d 4095 (1976)**.   "[T]o implicate a liberty interest, such charges of defamation must be coupled with the

---

[14] Plaintiff's cross-reference to a group of 241 paragraphs in Plaintiff's FAC (*See* Doc. 46, p. 48) is insufficient to plead his defamation *per se* claims with "precision and particularity."   The Court has no duty to sift through all of Plaintiff's evidence and make his arguments for him.

alteration of a legal status, such as the loss of an employment position." ***Townsend v. Vallas*, 256 F.3d 661, 669 (7th Cir. 2001)**.

Here, Plaintiff's claim fails as a matter of law because he merely asserts that Defendants Wells' and Mudge's statements at the press conference deprived him the right to an impartial jury untainted by false news reports. Plaintiff offers no evidence of a defamatory statement incident to any alleged change in legal status. Plaintiff has failed to establish a § 1983 claim arising from Defendants alleged defamatory statements during a press conference. ***See, e.g. Buckley v. Fitzsimmons*, 20 F.3d 797-798 (7th Cir. 1994)**.

All three of Plaintiff's defamation claims fail on the merits. Accordingly, Defendants motions for summary judgment with respect to defamation are **GRANTED**. Count 10, Count 12 and the part of Count 22 relating to defamation are dismissed with prejudice.

### IX.     Alleged Violation of Pen Register Act and the Stored Communications Act.

Plaintiff has failed to respond to the Madison County Defendants' motion for summary judgment regarding these two claims, which the Court deems to be an admission of the merits. When reviewing a grant of summary judgment, we typically view the facts in the light most favorable to the non-moving party, *Salvadori v. Franklin Sch. Dist.*, 293 F.3d 989, 992 (7th Cir. 2002), but when a party fails to respond to a motion for summary judgment, its failure "constitutes an admission . . . that there are no

disputed issues of genuine fact warranting trial." *Flynn v. Sandahl*, **58 F.3d 283, 288 (7th Cir. 1995)**. Further, under Local Rule 7.1(c), the Court may consider Plaintiff's failure to respond as an admission of the merits of the motion. *See* **SDIL-LR7.1(c);** *see also Tobel v. City of Hammond*, **94 F.3d 360, 362 (7th Cir. 1996) ("[T]he district court clearly has authority to enforce strictly its Local Rules . . . ")**. Accordingly, the Madison County Defendants' motion for summary judgment as to these two claims is **GRANTED**. Counts 19 and 20 are dismissed with prejudice.

## X.   Plaintiff's *Monell* Claims

To the extent that Plaintiff alleges *Monell* claims against Defendant City of Chicago, Madison County, or the Madison County Sheriff's Department, these claims fail. A municipality is not liable under Section 1983 unless the plaintiff can demonstrate that a constitutional deprivation occurred as a result of a city policy or custom. *Monell v. Dep't of Soc. Servs.*, **436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)**. Allegations of the existence of a municipal policy without any factual support are insufficient. *Sivard v. Pulaski County*, **17 F.3d 185, 188 (7th Cir. 1994)**. In addition, to the extent Plaintiff asserts *Monell* claims of liability against Defendant City of Chicago, Madison County or the Madison County Sheriff's Department; those claims are dismissed because a *Monell* claim depends entirely on the validity of the underlying constitutional violations. *See Bielanski v. County of Kane*, **550 F.3d 632, 645 (7th Cir. 2008);** *see also Windle v. City of Marion, Ind.*, **321 F.3d 658, 663 (7th Cir. 2003) ("[A]**

**plaintiff must prove that the individual officers are liable on the underlying substantive claim in order to recover damages from a municipality under [a theory of] . . . failure to train.")**.

XI.    **Plaintiff's Remaining State Law Claims**

With respect to Plaintiff's remaining state law claims: False Light (Count 11), Intentional Infliction of Emotional Distress (Count 8), and Violation of the Illinois Electronic Criminal Surveillance Act (Count 21), none of these claims have been raised by Defendants nor has the applicable law been properly briefed.   A district court may relinquish jurisdiction over supplemental state law claims after it has dismissed the federal claims before trial.   *See Nightingale Home Healthcare, Inc. v. Anodyne Therapy, LLC*, **589 F.3d 881 (7th Cir. 2009)**.   The district court's discretion to relinquish supplemental jurisdiction is "almost unreviewable," especially when all federal claims have dropped from a case before trial and only state-law claims remain.   *Kennedy v. Schoenberg, Fisher & Newman, Ltd.*, **140 F.3d 716, 728 (7th Cir. 1998)**.

There are, however, three situations when a federal court should retain supplemental claims, even when the federal claims have all dropped out: where the statute of limitations would bar the re-filing of the supplemental claims in state court (in fact section 1367(d) explicitly tolls the statute of limitations for 30 days after dismissal of a supplemental claim, to allow the plaintiff to re-file the claim in state court without being time-barred); where substantial federal judicial resources have already been

expended on the resolution of the supplemental claims; and where it is obvious how the claims should be decided.  ***Williams Electronics Games, Inc. v. Garrity*, 479 F.3d 904, 907 (7th Cir. 2007) (citing *Wright v. Associated Ins. Cos*., 29 F.3d 1244, 1251-52 (7th Cir. 1994))**.

Here, none of these situations exist.  First of all, Section 1367(d), which grants Plaintiff an additional 30 days to re-file dismissed supplemental claims in state court, "removes the principal reason"-an expired statute of limitations-"for retaining a case in federal court when the federal claim belatedly disappears."  ***Myers v. County of Lake*, 30 F.3d 847, 848-49 (7th Cir. 1994)**.   Further, even if federal law did not toll the statute of limitations, Illinois law provides Plaintiff with one year from the dismissal of his claims to re-file in state court.  ***See* 735 ILCS 5/13-217**.   According to Section 13–217, if an action is dismissed by a United States District Court for lack of jurisdiction, "then, whether or not the time limitation for bringing such action expires during the pendency of such action, the plaintiff ... may commence a new action within one year or within the remaining period of limitation, whichever is greater, after ... the action is dismissed by a United States District Court for lack of jurisdiction[.]"  **735 Ill. Comp. Stat. 5/13–217 (West 1994); *see also Hudson v. City of Chicago,* 228 Ill.2d 462, 321 Ill.Dec. 306, 889 N.E.2d 210, 214 (Ill.2008) (explaining that the quoted language of section 13–217, which was in effect prior to the amendments of Public Act 89–7 (effective March 9, 1995), is currently in effect, because Public Act 89–7 was found unconstitutional in *Best v. Taylor Machine Works,* 179 Ill.2d 367, 228 Ill.Dec. 636, 689 N.E.2d 1057 (1997));**

*see also DeClerck v. Simpson,* **143 Ill.2d 489, 160 Ill.Dec. 442, 577 N.E.2d 767, 770 (Ill.1991) ("The savings statute ... allows a plaintiff, whose original action has been dismissed on specific grounds, to file an action again though the statute of limitations has run.").** District courts have routinely relied on this statute as a basis for relinquishing jurisdiction. *See, e.g ., Sharp Elec. Corp. v. Metropolitan Life Ins. Co.,* **578 F.3d 505, 515 (7th Cir. 2009) ("While it is likely that the statute of limitations has technically run on some, if not all, of [plaintiff's] state-law claims, there is an Illinois statute that authorizes tolling in these circumstances. If it applies, then [the plaintiff's] claims would not be time-barred if it pursues them in state court.");** *Davis v. Cook County,* **534 F.3d 650, 654 (7th Cir. 2008) (finding the district court's decision to relinquish supplemental jurisdiction over plaintiff's remaining state law defamation claim was not an abuse of discretion in part because Section 13–217 tolled the statute of limitations and thus the plaintiff was not barred by the limitations period from filing her claim in state court).** Thus, it is apparent to the Court that Plaintiff will not be prevented from filing his state law claims in state court.

Further, substantial federal judicial resources have not been expended on these remaining state law claims, nor is it obvious to the Court as to how the claims should be decided due to the lack of adequate briefing on these remaining claims. In this situation, the Court finds that the state court is better situated to hear these remaining state law claims. *See Peterson v. H&R Block Tax Servs., Inc.,* **22 F.Supp.2d 795, 806 (N.D.Ill. 1998) (although the exercise of supplementary jurisdiction is discretionary,**

state courts are better situated to hear remaining state-law claims after the dismissal of related federal claims); *Sibley v. Lemaire*, 184 F.3d 481, 490 (5th Cir. 1999) (the district court did not abuse its discretion when it declined to conduct a lengthy trial on state-law negligence claims in federal court after claims under 42 U.S.C. § 1983 were dismissed by summary judgment).

Therefore, this Court exercises its discretion in favor of declining to exercise supplemental jurisdiction over Count 8, Count 11 and Count 21 of the FAC. Those claims are dismissed without prejudice.

## XII.   State Law *Respondeat Superior* and Indemnification

"A municipality may not be held liable under § 1983 based on a theory of *respondeat superior* or vicarious liability." **Lewis v. City of Chicago, 496 F.3d 645, 656 (7th Cir. 2007)**. If the state law claims are dismissed, so must the *respondeat superior* claim. **See Moore v. City of Chicago, 2011 WL 1231318, at \*5 (N.D.Ill. 2011)**.

The Illinois Local Government and Governmental Employees Tort Immunity Act directs municipalities to pay tort judgment and settlement for the liability of municipal employees acting within the scope of their employment. **745 ILCS 10/9-102**. Illinois law exempts public entities from liability "for any injury resulting from an act or omission of its employee where the employee is not liable." **745 ILCS 10/2-109**.

Because the Court concludes that Defendants are entitled to summary judgment on the state law malicious prosecution claims (Counts 6 & 7), state law defamation claims (Counts 10 & 12), state law false imprisonment claim (Count 9), state law

unlawful strip search claim (Count 14), and state law conspiracy claim (Count 15), Plaintiff has not established the employee liability necessary for indemnification (***See Williams v. Edwards*, 2012 WL 983788, at \*15 (N.D.Ill. 2012)),** nor has he established liability necessary for *respondeat superior*.   Accordingly, the indemnification claim (Count 17) and *respondeat superior* claim (Count 18), as they relate to the aforementioned claims (Counts 6, 7, 9, 10, 12, 14 and 15) are dismissed with prejudice.

Notably, however, Plaintiff's *respondeat superior* and indemnification claims as to the state law IIED claim (Count 8), the state law False Light claim (Count 11), and the Violation of the Illinois Electronic Criminal Surveillance Act (Count 21) are dismissed without prejudice, to allow Plaintiff the opportunity to re-file these claims in state court.

*Conclusion*

For the reasons stated herein, the Chicago Defendants' Motion for Summary Judgment (Doc. 146) is **GRANTED**, and the Madison County Defendants' Motion for Summary Judgment (Doc. 145) is **GRANTED**.   The Court declines to exercise supplemental jurisdiction over Plaintiff's IIED claim (Count 8), False Light claim (Count 11) and claim for Violation of the Illinois Electronic Criminal Surveillance Act (Count 21).   Accordingly, Counts 8, 11, 21, as well as any Indemnification (Count 17) and *Respondeat Superior* (Count 18) theories of liability relating to these claims, are **DISMISSED without prejudice**.   All pending motions are **DENIED as moot**.   The case is **CLOSED** and the Clerk of the Court is **DIRECTED** to enter judgment

accordingly.

IT IS SO ORDERED.

DATED:   August 22, 2013

                                                  s/ Michael J. Reagan_____
                                                  MICHAEL J. REAGAN
                                                  United States District Judge